**PHILLIPS DAYES LAW GROUP PC**
**ATTORNEYS AT LAW**
**Suite 1500**
**3101 North Central Avenue**
**Phoenix, Arizona 85012**
**(602) 258-8900**
minute_entries@phillipslaw.com

Trey Dayes (Utah Bar No. 7504)
treyd@phillipsdayeslaw.com
John L. Collins (Utah Bar No. 10790)
johnc@phillipsdayeslaw.com
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARMENLITA BUSBY,<br><br>Plaintiff,<br><br>v.<br><br>SWIFT BEEF COMPANY, a foreign corporation, d/b/a SWIFT & COMPANY TRADE GROUP, d/b/a SWIFT GLOBAL USA, d/b/a E. A. MILLER, d/b/a JBS USA,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY DEMAND**<br><br>**Civil No. 1:14-cv-00009-DBP**<br><br>Magistrate Judge Judge Dustin B. Pead |

This is an action for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., and of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.*

## NATURE OF THE CASE

1. Plaintiff Carmenlita Busby was discriminated against because of her Native American religion and her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, *et seq*. ("Title VII").

2. In addition, Defendant discriminated against Plaintiff because of her disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA").

3. Defendant also interfered with Plaintiff's rights protected by the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA").

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C § 1331 and 42 U.S.C. § 2000e-5.

5. All conditions precedent to jurisdiction under 42 U.S.C § 2000e-5 have been met. Specifically, Plaintiff timely filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and of the ADA. Plaintiff received a notice of right to sue Defendant. She commenced this action within ninety (90) days after receiving the notice of right to sue.

6. Defendant, by virtue of its own acts and omissions or by virtue of the acts and omissions of one or more of its agents, employees, or representatives, has conducted business or caused events to occur within the District of Utah, and within Cache County, Utah, giving rise to both subject matter and personal jurisdiction of this Court.

7. Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff Carmenlita Busby is a woman residing in Box Elder County, Utah.

9. Defendant Swift Beef Company is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Colorado, and doing business at a number of facilities in the State of Utah as "Swift & Company Trade Group," "Swift Global USA," "E.A. Miller," and "JBS USA."

10. Defendant is engaged in meat slaughtering and processing. It was Plaintiff's "employer" for all purposes including Title VII, within the meaning of 42 U.S.C. § 2000e(b), the ADA, within the meaning of 42 U.S.C. § 12111(5), and the FMLA, within the meaning of 29 U.S.C. § 2611(4).

## GENERAL ALLEGATIONS

11. Plaintiff began working for Plaintiff at its Hyrum, Utah, facility in October 2011 in the fabrication department. Plaintiff's responsibilities included sealing and throwing large bags of beef "lifter meat" onto a conveyor belt.

12. The repetitive motions caused an injury to Plaintiff's right elbow.

13. In April 2012, Plaintiff slipped and fell at work in water that had overflowed from a janitor's closet into the hallway. In the fall, she re-injured her right elbow and also injured her hip and her back.

14. In November 2012, Plaintiff re-injured her right elbow at work again when she attempted to save a thirty-two pound chuck roll that was falling toward the floor.

15. In January 2013, based on her injuries and instructions from her physician,

Plaintiff requested that Defendant provide her with reasonable workplace accommodations that would prevent her from aggravating her injuries and allow them to heal. Defendant responded by transferring Plaintiff to a new position, scraping spinal cords, on January 10, 2013.

16. After the transfer, another employee began making repeated inappropriate comments of a sexual nature and making sexual advances toward Plaintiff.

17. Plaintiff reported the events to her supervisor, Sean Daylen.

18. Daylen did nothing to protect Plaintiff from her sexually-aggressive coworker.

19. The coworker continued to harass Plaintiff, including by twice shoving half-ton beef carcasses into Plaintiff.

20. When harassment occurred on a day on which Daylen was absent from work, Plaintiff reported the incidents to a member of upper management, Moise Munoz.

21. Just like Daylen, Munoz did nothing to stop the harassment.

22. When Plaintiff's physician ordered that she not scrape spinal cords, pass bags, or lift more than ten pounds, Defendant assigned her to work in the laundry room.

23. A coworker in the laundry room began harassing Plaintiff, accusing her of faking her injuries. In response, Plaintiff reported the harassment to Munoz, and Defendant transferred Plaintiff to work with hides in the rendering department of the plant.

24. While working in the department, on March 1, 2013, a coworker groped, restrained, and attempted to kiss Plaintiff.

25. Plaintiff reported the harassment to another supervisor, Shaun Walk.

26. On March 4, 2013, a number of Defendant's officials held a meeting regarding Plaintiff's complaint. The meeting largely consisted of the officials' interrogation of Plaintiff and caustic accusations that Plaintiff's complaint was false.

27. Following the meeting, Defendant returned Plaintiff to her post working only feet from her attacker.

28. Plaintiff reported her unease at working in such close proximity with her attacker to Defendant's Personnel Manager, Tim Tuckett. In response, Tuckett stated that he should suspend Plaintiff for making her claim of sexual harassment.

29. On March 6, 2013, Defendant assigned to work in a portion of the rendering department known as the "gut bin."

30. A supervisor described to Plaintiff her duties, which would be to use a long metal hook to reach in and pull foreign objects from the "gut bin."

31. Plaintiff initially questioned the assignment as the lifting and motion required for the position were exactly those that caused her shoulder injury. However, she followed the supervisor to the "gut bin."

32. The "gut bin" consists of a filthy, vermin-invested room, an open trench through which flows a river of cow manure, and a raised metal platform suspended above a pit. The pit contained rotating saw blades grinding and mutilating portions of the slaughtered animals.

33. As a member of a Native American tribe, Plaintiff practices the traditional religion of her people.

34. In accordance with her religious beliefs, Plaintiff endeavored to do all that she could to maintain balance and harmony with the Earth, to respect nature, and to live

in harmony with man, animals, plants, and even insects.

35. Plaintiff's religious beliefs conflicted with practices in the "gut bin" to such an extent that Plaintiff had an immediate psychological breakdown.

36. Plaintiff's supervisor sent her to Tuckett.

37. Tuckett instructed Plaintiff that her only options were to return to the gut bin or to go home, unpaid. Because Plaintiff could not cope with the horrors of the gut bin, she went home.

38. Plaintiff contacted Defendant's third-party disability administrator because the lifting and motion requirements for the job in the gut bin were contrary to her doctor's orders. However, the third-party disability administrator reported that, contrary to the instructions given to Plaintiff, another employee would do the lifting. On that basis, Defendant refused to give Plaintiff an accommodation for her disability, forcing her to return to the gut bin.

39. Plaintiff broke down again the next day as she reported to the gut bin.

40. She requested, through her union representative, a meeting with Tuckett and Walk and reported to them the contradiction between her religious beliefs and the practices in the gut bin. Based on that contradiction, Plaintiff sought reassignment to a different area of the facility.

41. Tuckett refused to reassign Plaintiff, noting that because of her complaints of discrimination there was "no other place we want to put you."

42. Eventually, on March 11, 2013, Walk assigned Plaintiff to a different job.

43. The course of the next month consisted of working hard and visiting physicians necessary heading toward a surgery necessary to repair Plaintiff's injury. On

April 9, 2013, Plaintiff went to such an appointment. The next day, Defendant terminated Plaintiff's employment.

## COUNT ONE
## RELIGIOUS DISCRIMINATION
## (Violation of Title VII, 42 U.S.C. §2000e, *et seq*.)

44. Plaintiff incorporates by reference Paragraphs 1 through 43 above as if fully set forth herein.

45. Defendant discriminated against Plaintiff in the terms and conditions of her employment because of her religion in violation of Title VII as a result of the discriminatory and hostile work environment created by, without limitation, Tuckett and Walk, who are both managerial employees of Defendant with decision making authority.

46. Title VII provides, in pertinent part, that it is an unlawful employment practice for an employer:

> [T]o fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

47. Title VII further provides, in pertinent part, that it shall be an unlawful employment practice for an employer:

> [T]o limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because

> of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(2).

48. Plaintiff practices a traditional Native American religion and is a member of a protected class entitled to the protection of Title VII.

49. Defendant has engaged in unlawful discrimination and unlawful employment practices prohibited by 42 U.S.C §§ 2000e-2(a)(1), (2), including, but not limited to:

> a. Treating Plaintiff less favorably in the terms and conditions of her employment than similarly situated non-practitioners of a traditional Native American religion employed by Defendant including, but not limited to, requiring Plaintiff to work in conditions that are offensive to her faith on a religious basis and refusing to reassign her to a position that was suitable and non-offensive for a period of time, despite her requests;
>
> b. Creating a hostile work environment because of Plaintiff's religion that was severe or pervasive, including, but not limited do, hostilely discouraging Plaintiff from observing her faith and affirmatively assigning her to positions knowing the position and work required would be offensive to Plaintiff to the extent that it substantially altered the terms and conditions of her employment

50. Plaintiff's religion was the sole or motivating factor in Defendant's treatment of Plaintiff.

51. At all relevant times Plaintiff was treated less favorably than her co-workers who did not share her Native American religious beliefs and was subjected to continuing hostile work environment.

52. As a direct result of the hostile work environment, Plaintiff has suffered mental and emotional distress, pain and suffering, anger, depression, anxiety, humiliation, and embarrassment.

53. By virtue of one, more, or all of the foregoing violations of Title VII as alleged above, Plaintiff is entitled to preliminary and permanent equitable and injunctive relief, including, but not limited to, all seniority, benefits, and back pay.

54. By virtue of one, or all of the foregoing violations of Title VII as alleged above, Plaintiff has been damaged and suffered economic harm in the form of, but not limited to, lost wages and benefits, out-of-pocket expenses and monetary loss as well as non-economic damages all of which she is entitled to recover from Defendant plus pre-judgment interest, attorneys' fees and costs.

55. Defendant engaged in conduct in reckless indifference to Plaintiff's federally protected rights, so Plaintiff is entitled to recover punitive damages.

56. Plaintiff has retained the law firm of Phillips Dayes Law Group, P.C., to represent her in this litigation and has agreed to pay a reasonable fee for the services rendered in the prosecution of this action on her behalf.

## COUNT TWO
## SEX DISCRIMINATION
## (Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)

57. Plaintiff incorporates and adopts paragraphs 1 through 56 above as if fully

set forth herein.

58. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII as a result of the discriminatory and hostile work environment created by Defendant and its employees.

59. Title VII provides that it is an unlawful employment practice for an employer:

> [T]o fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

60. Title VII further provides, that it is an unlawful employment practice for an employer:

> [T]o limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(2).

61. Plaintiff is a female and is a member of a protected class of individuals entitled to the protections of Title VII.

62. Defendant has engaged in unlawful discrimination and unlawful employment practices prohibited by 42 U.S.C. §§ 2000e-2(a)(1), (2) including, but not

limited to:

    a. Treating Plaintiff less favorably than similarly situated male employees in the terms and conditions of her employment, including, but not limited to, consistent sexual innuendos made solely because of Plaintiff's sex; and

    b. Creating a hostile work environment because of Plaintiff's sex, which was severe or pervasive to an extent that it substantially altered the terms and conditions of her employment.

63. Plaintiff's sex was the sole or motivating factor in Defendants' treatment of Plaintiff.

64. Plaintiff was treated less favorably than her male co-workers and was subject to a continuing hostile work environment.

65. As a direct result of the hostile work environment, Plaintiff has suffered mental and emotional distress, pain and suffering, anger, depression, anxiety, humiliation, and embarrassment.

66. Plaintiff is entitled to preliminary and permanent equitable and injunctive relief, including, but not limited to, all seniority, benefits, and back pay.

67. Plaintiff has suffered damages and economic harm in the form of, but not limited to, lost wages and benefits, out-of-pocket expenses, and monetary loss, as well as non-economic damages, all of which she is entitled to recover from Defendant plus pre-

judgment interest, attorneys' fees, and costs.

68. Defendant engaged in conduct in reckless indifference to Plaintiff's federally protected rights, so Plaintiff is entitled to recover punitive damages.

69. Plaintiff has retained the law firm of Phillips Dayes Law Group, P.C., to represent her in this litigation and has agreed to pay a reasonable fee for the services rendered in the prosecution of this action on her behalf.

## COUNT THREE
## RETALIATION
## (Violation of Title VII, 42 U.S.C § 2000e-3(a))

70. Plaintiff incorporates and adopts paragraphs 1 through 69 above as if fully set forth herein.

71. Title VII provides in pertinent part that:

> [I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees… because he has opposed any practice made an unlawful employment practice by [Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C § 2000e-3(a).

72. Plaintiff has opposed practices made unlawful by Title VII or has participated in activities protected by Title VII and is entitled to the protection of Title VII for those activities, including, but not limited to, making internal complaints of unlawful discrimination and harassment.

73. After Plaintiff engaged in activity prohibited by Title VII, such as making

12

internal complaints, Defendant retaliated against her and engaged in other unlawful employment practices prohibited by 42 U.S.C. §§ 2000e-3(a), including, but not limited to, one or more of the following acts or omissions:

    a. Treating Plaintiff less favorably than similarly situated employees of different religious backgrounds and gender in the terms and conditions of her employment, including, but not limited to, creating and permitting a severe or pervasive hostile work environment solely because of Plaintiff's religion, gender, and disability; and

    b. Evaluating Plaintiff using a more rigorous or arbitrary standard.

74. Defendant retaliated against Plaintiff after she made complaints to her supervisors regarding the hostile work environment.

75. As a direct result of her complaint of unlawful discrimination, Plaintiff has been subjected to a more rigorous and arbitrary standard of performance evaluation, has been given offensive workplace assignments, and was terminated.

76. As a direct result of the retaliatory action by Defendants, Plaintiff has suffered damage to her career, mental and emotional stress, pain and suffering, anger, depression, anxiety, humiliation and embarrassment.

77. By virtue of one or all of the foregoing violations of Title VII as alleged above, Plaintiff has suffered damages and economic harm in the form of, but not limited to, lost wages and benefits, out-of-pocket expenses and monetary loss as well as non-

economic damages, all of which she is entitled to recover from Defendant plus pre-judgment interest, attorneys' fees and costs.

78. Defendant engaged in conduct in reckless indifference to Plaintiff's federally protected rights, so Plaintiff is entitled to recover punitive damages.

79. Plaintiff has retained the law firm of Phillips Dayes Law Group, P.C., to represent her in this litigation and has agreed to pay a reasonable fee for the services rendered in the prosecution of this action on her behalf.

## COUNT FOUR
## DISABILITY DISCRIMINATION
## (Violation of the ADA, 42 U.S.C. §§ 12112, 12116, 12203)

80. Plaintiff incorporates and adopts paragraphs 1 through 79 above as if fully set forth herein.

81. The ADA prohibits employers from discriminating against employees on the basis of a disability, whether "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

82. Plaintiff was a "qualified individual" and an "employee" under the ADA, as defined by 42 U.S.C. § 12111(4), (8).

83. Defendant is a "covered entity" and an "employer" under the ADA, as defined by 42 U.S.C. § 12111(2), (5).

84. Defendant discriminated against Plaintiff on the basis of a disability,

contrary to the provisions of 42 U.S.C. § 12112(a).

85. Defendant failed to offer or to provide Plaintiff with reasonable accommodations sufficient to allow Plaintiff to perform the necessary job functions.

86. As a result of Defendant's conduct, Plaintiff is entitled to collect wages, employment benefits, and pension benefits denied or lost, interest on this amount, liquidated damages equal to the lost compensation, wages, and benefits, including her back pay damages, pain and suffering for Defendant's retaliation, and Plaintiff's reasonable attorneys' fees and costs. Plaintiff also is entitled to reinstatement or, in lieu thereof, front pay and other appropriate equitable relief, as well as all other remedies available under the ADA.

87. Plaintiff has retained the law firm of Phillips Dayes Law Group, P.C., to represent her in this litigation and has agreed to pay a reasonable fee for the services rendered in the prosecution of this action on her behalf.

## COUNT FIVE
## FMLA INTERFERENCE
## (Violation of the FMLA, 29 U.S.C. § 2615(a)(1))

88. Plaintiff incorporates and adopts paragraphs 1 through 87 above as if fully set forth herein.

89. The FMLA permits an eligible employee to take up to twelve weeks of unpaid leave in any twelve month period for various purposes, including a serious health condition that makes the employee unable to perform one or more of the essential

functions of her job.

90. Specifically, the FMLA imposes liability on covered employers for interfering, restraining, or denying the exercise of, or attempt to exercise, any right provided under the FMLA, pursuant to 29 U.S.C. § 2615(a).

91. Plaintiff was an "eligible employee" under the FMLA, and Defendant is a covered employer.

92. Plaintiff suffered from a "serious health condition" as defined by the FMLA.

93. Defendant interfered, restrained, or denied the exercise of, or the attempt to exercise, Plaintiff's rights under the FMLA.

94. Plaintiff requested qualified FMLA leave because of her serious health condition and, in particular, intermittent leave during which she could attend appointments with her physicians.

95. Defendant penalized Plaintiff by, without limitation, terminating her employment based on absences incurred so that Plaintiff could seek the medical treatment necessary for her recovery from injuries suffered in the workplace.

96. Plaintiff's exercise of her rights under the FMLA constituted a negative factor in Defendant's determinations to terminate Plaintiff's employment and to take other negative employment actions against Plaintiff.

97. Plaintiff's exercise of her rights under the FMLA was a motivating reason

for Defendant's adverse treatment of Plaintiff.

98. As a result of Defendant's conduct, Plaintiff is entitled to collect her wages, employment benefits and pension benefits denied or lost, interest on this amount, liquidated damages equal to the lost compensation, wages, and benefits, including her back pay damages, and Plaintiff's reasonable attorneys' fees and costs. Plaintiff also is entitled to reinstatement or, in lieu thereof, front pay and other appropriate equitable relief, as well as all other remedies available under the FMLA.

## DAMAGES

99. As a direct and proximate result of the breach of Plaintiff's rights in each of the above mentioned claims for relief, Plaintiff sustained and continues to sustain economic and non-economic injuries, including, but not limited to, loss of income, benefits, mental anguish and emotional distress. Plaintiff is entitled to compensation for the harm and damages resulting from the Defendant's unlawful acts.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor, and against Defendant, as follows:

A. Awarding Plaintiff damages for her back pay, front pay, lost compensation and benefits, and other relief to be determined by the trier of fact;

B. Awarding Plaintiff economic and non-economic damages in an amount to be determined by the trier of fact;

C. Awarding Plaintiff special, incidental, and consequential damages in an amount to be determined by the trier of fact;

D. Awarding Plaintiff punitive and exemplary damages in an amount to be

determined by the trier of fact;

E. Awarding Plaintiff pre-judgment and post-judgment interest;

F. Awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988, 2000e-5(k), and 29 U.S.C. § 2617(3); and

G. Awarding Plaintiff such other and further relief as the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff and all similarly situated employees hereby request that, upon trial of this action, all issues be submitted to and determined by a jury except those issues expressly reserved by law for determination by the Court.

Dated: February 3, 2014

                Respectfully submitted,

                **PHILLIPS DAYES LAW GROUP PC**

                /s/ John L. Collins
                John L. Collins
                Arizona Bar No. 030351
                Email: johnc@phillipsdayeslaw.com
                Attorney for Plaintiff